A. A. PAUL v. NATIONAL AUCTION COMPANY AND S. A. EURE AND W. T
BURTON, TRADING AS BURTON BROTHERS.

(Filed 23 February, 1921.)

**1. Libel—Slander—Publication—Facts Constituting Slander.**

To constitute a libel it is not necessary that the publication should
impute the commission of a crime, infamous or otherwise, but the charge
is sufficient when a false publication is made, holding one up to public
hatred, obloquy, contempt or ridicule, etc.; and the charge may be sus-
tained by a false publication reasonably calculated to injure one in his
trade, business or profession, by imputing to him fraud, indirect dealing
or want of capacity in reference to the same, without the averment of
special damages.

**2. Same—Pleadings—Admissions—Demurrer—Matters of Defense—Trials
—Questions for Jury.**

By contract the two defendants agreed to sell at auction the lands of
customers the plaintiff should procure, upon a division of the profits. Ac-
cordingly, and at the instance of one of the defendants, the plaintiff
advertised, to procure customers, in a daily newspaper published and
circulating in that locality, to which the other defendant published in the
following issue of the paper, a denial of any such arrangement, or that he
had any knowledge thereof, and "warned" the public that he would not
be bound by any selling arrangements made by them with the plaintiff,
etc., and this with full knowledge of the contract and against the protest
of the plaintiff that it would do him serious damage in his business and
prospects: *Held*, defendant's publication was libelous without averment
of special damages.

**3. Libel—Notice—Damages—Statutes—Newspapers.**

As to whether C. S., 2429, et seq., as to notice to defendant in an action
for libel, looking to a retraction and apology, applies to individuals hav-
ing no connection with a newspaper publishing the libel, *Query?* *Held*,

PAUL *v.* AUCTION CO.

the statutes having significance only on the question of punitive damages, do not include compensatory damages for "pecuniary loss, physical pain, mental suffering, and injury to reputation."

4. **Pleadings—Answers—Admissions—Instructions—Appeal and Error—Requests for Instructions.**

In an action for libel, where the defendant has filed no answer, an instruction of the trial judge that the plaintiff must satisfy the jury as to the amount of the damages, and that the allegations of the libelous matter must be taken as true against the defendant is not error (C. S., 543), and *Held* in this case; while the charge is somewhat general on the issue of damages, it will not be held for reversible error on the record, and the absence of defendant's prayer to make it more specific.

5. **Libel—Pleadings—Admissions—Issues—Waiver.**

*Held,* in this action to recover damages for slander, the defendant's failure to answer was not waived by the submission of an issue without objection as to whether the publication was wrongful and unlawful, and made after the plaintiff's request not to publish it, but it was for the jury to determine whether in addition to the admissions of a cause of action growing out of defendant's failure to answer, the tort so admitted was willful and without just cause or excuse.

APPEAL from *Cranmer, J.,* at May Term, 1920, of BEAUFORT.

The cause was before us at the preceding term, and a *certiorari* was ordered for a further statement of case on appeal. The writ having been complied with, it appears that plaintiff instituted this action returnable to October Term of the Superior Court of 1917, against the National Auction Company, S. A. Eure, its president, and W. T. Burton, trading as Burton Brothers. That personal service of summons was made on all of the defendants, and verified complaint duly filed against all of them, alleging in effect a breach of contract on part of all defendants to associate themselves with plaintiff as dealers in real estate, and a libelous publication against plaintiff concerning such association, and contract causing damages, etc. There were separate answers filed by the auction company and S. A. Eure, its president, in denial of the contract or breach thereof, etc. Defendant Burton made no answer, and entered no appearance in the cause until after verdict, when he appeared and moved to set same aside, and which motion was overruled by the court. On issues submitted, the jury rendered the following verdict:

"1. Did defendants auction company and Burton make and enter into a contract with plaintiff, as alleged in the complaint? Answer: 'Yes.'

"2. If so, was plaintiff ready, able, and willing to perform the same on his part? Answer: 'Yes.'

"3. Did said defendants wrongfully breach said contract, as alleged? Answer: 'Yes.'

"4. If so, what damage has plaintiff sustained by reason of the breach thereof? Answer: 'None.'

"5. Was the publication of the notice in the *Daily News* of 31 May, 1917, wrongful and unlawful on the part of the defendant Burton, and did plaintiff request said defendant, before its publication, not to publish same? Answer: 'Yes.'

"6. If so, what damages has plaintiff sustained by reason of the said publication by said W. T. Burton, trading as Burton Brothers? Answer: '$2,500.' "

Judgment on verdict for plaintiff. Defendant Burton excepted and appealed, assigning for error the denial of his motion to set aside the verdict, and refusal of his Honor to hold as to the alleged libel that no cause of action had been stated or proved. Other specified objections of the charge as given.

*Ward & Grimes, Small, MacLean, Bragaw & Rodman, and J. D. Paul for plaintiff.*

*W. C. Rodman, W. A. Lucas, and Skinner & Whedbee for defendant.*

HOKE, J. The allegations in the complaint, duly verified and unanswered by defendant Burton, are in effect that the publication, the basis of plaintiff's cause of action, was both false and malicious, and designed and intended to injure plaintiff in his business reputation, to his great damage, and the evidence offered in support of the charge tended to show that in 1917 plaintiff, a young man desiring to enter the real estate business in the town of Washington and vicinity, a new field, was advised that his efforts and business success would be greatly promoted if he would associate himself with persons of experience and established repute in that locality, and with that view plaintiff formed an association with defendants, by which the latter were to auction the properties secured by plaintiff to the best advantage, and they were to divide the profits, one-third each to plaintiff and the National Auction Company and W. T. Burton, trading as Burton Brothers. That acting on the suggestion of defendant S. A. Eure, president of the company, plaintiff forthwith posted several advertisements concerning the business, and also caused to be published in the *Washington Daily News,* in its issue of 30 May, 1917, a notice of his business and of his association with defendants as follows:

## AN IMPORTANT NOTICE.

I have associated myself with the National Auction Company of Ayden, and the famous Burton Brothers of Wilson, recognized as the foremost auctioneers in the county.

PAUL *v.* AUCTION CO.

If you have land to sell at auction, or in any other way, it will pay you to see me. We have the largest, oldest, and best equipped force in the South. We give sales that cause the crowds to flock from miles around. Baloon ascensions and other features are used for attractions.

Call at my office and investigate. Attractive advertising matter is here for your inspection.

WE DO THINGS

A. A. PAUL,

Real Estate and Insurance,

Washington, N. C.

That in the issue of said paper the following day defendant Burton caused to be published a notice signed by him in repudiation of plaintiff's advertisement in terms as follows:

TO THE PUBLIC

In yesterday's *Daily News* appeared an advertisement by A. A. Paul, stating that he had associated himself with the National Auction Company, and the famous Burton Brothers of Wilson, for the sale of auction contracts in this community. We have no authority to speak for the National Auction Company of Ayden, but wish to announce that there is absolutely no contract or connection between Mr. Paul and the Burton Brothers, nor has there ever been. Furthermore, Mr. Paul has had no conference whatever with the Burton Brothers about such an association as he announced by advertisement yesterday. We wish to warn the public that we have no connection whatever with Mr. Paul, nor has he to our knowledge visited our office at Wilson. We wish to inform the public that in dealing with Mr. Paul it is not dealing in any way with us, and we will in no way be responsible for any contract made with him, nor bound in any way by any such contract.

BURTON BROTHERS,

Of Wilson, N. C.

The defendant having learned of defendant Burton's purpose to make this publication, and before same appeared, sought an interview with said defendant, fully informed him of the contract existent between them, and endeavored to dissuade him, urging that the effect could only work serious harm to plaintiff's prospects and business, but notwithstanding plaintiff's protest and remonstrance, defendant persisted in his purpose; and that said notice so published as heretofore stated was false and malicious, designed and intended to injure plaintiff in his character and business.

It is fully recognized that in order to constitute a libel it is not necessary that the publication should impute the commission of crime, in-

famous or otherwise, but the charge is established when a false publication is made, holding one up to public hatred, obloquy, contempt, or ridicule; and further, and without averment of special damages, such a charge may be sustained by a false publication calculated to injure one in his trade, business, or profession by imputing to him "fraud, indirect dealing, or incapacity" in reference to the same. The publication complained of in this instance begins by specially referring to plaintiff's advertisement of the day before, expressly repudiates plaintiff's claim to be associated with defendant, and in terms and under circumstances well calculated to degrade plaintiff in the estimation of the community, and to greatly weaken or destroy its confidence in his business integrity, and this after plaintiff had fully informed said defendant of the existence of the contract, and the circumstances attendant upon its execution, and protested against the publication and the harm it was likely to do him in his character and his calling, and under the principles stated, and numerous decisions here and elsewhere approving the same, such a publication so made in our opinion is clearly libelous, subjecting defendant to an action, and without averment of special damages. *Carter v. King,* 174 N. C., 549; *Jones v. Brinkley,* 174 N. C., 23; *Simmons v. Morse,* 51 N. C., 6; *Triggs v. Sun Printing Co.,* 179 N. Y., 144; *Riggs v. Dennison,* 3d Johnson, p. 198; *Manes v. Whiting,* 87 Michigan, 172; *Burt v. Advertiser, Etc., Co.,* 154 Mass., 238; *Lansing v. Carpenter,* 9 Wisconsin, 281; *Barron v. Smith,* 19 South Dakota, 50; *Sheibley v. Huse,* 75 Neb., 811; *Trebby v. Transcript Publishing Co.,* 74 Minn., 84; 19 American & English Encyclopedia (2 ed.), pp. 909-942; 17 R. C. L., pp. 263-294; Title, Libel and Slander, secs. 3-34.

It is further insisted in support of appellant's principal objection that there is no allegation of notice being served on defendant, looking to a retraction and apology pursuant to provisions of Consolidated Statutes, ch. 48, sec. 2429, *et seq.* In cases on these sections which have come under our observations, the suits were against the proprietors or publishers and editors of the newspapers and periodicals, but conceding that the language of this legislation is broad enough to include, and is intended to and does include a publication of the kind printed here, a publication by an individual having no business or other connection with the paper, etc., and this seems to be the clear meaning and purport of the law, the position cannot avail the appellant on the facts of this record. In the well considered case of *Osborn v. Leach,* 135 N. C., 628, the Court has held that these statutory provisions only have significance on the question of awarding punitive damages; that an action for libel may proceed for recovery of compensatory damages, whether the notice has been given or otherwise, the same case holding that such damages may be properly held to include compensation for "pecuniary

loss, physical pain, mental suffering, and injury to reputation." In the case before us, not only has there been no formal demurrer pointing out the defect suggested, the proper way under our decisions to present the objection, but a perusal of the record and the charge of the court on the subject fails to show that the element of punitive damages was in any way considered or passed upon by the jury, but on the contrary, gives clear indication that only compensatory damages have been awarded. There has no harm come to defendant, therefore, by the failure to allege or prove the statutory notice, and this exception also must be disallowed.

It was further objected that his Honor in charging the jury on the sixth issue, that as to damages, said, among other things: "The burden of this issue is upon the plaintiff; he must satisfy you of the amount of his damage. Burton makes no defense to this action. The allegations as to Burton are not denied, and are therefore to be taken as true as to him. You will write your answer to this issue some sum not exceeding $5,000. The plaintiff asks for $5,000, and you could not allow him more than that amount; do not take this as an intimation that you are to allow him that. You will consider and weigh with care the evidence on this point, and allow such fair and reasonable sum as you may find the plaintiff entitled to."

While this charge is somewhat general as to amount of damages to be awarded, on consideration of the entire record, we do not think it should be held for reversible error on that account in the absence of any prayer to make the same more specific, and as to the objection here chiefly urged that the statement of the cause of action not having been denied by the defendant Burton, must be taken to be true as to him, the charge seems to be fully justified by the statute directly bearing on the subject. Consolidated Statutes, sec. 543, to the effect that "every material allegation of the complaint not controverted by the answer shall be taken as true." Nor is the effect of this provision of defendant's failure to answer prevented or waived by the submission of the fifth issue as to whether the publication of that issue was "wrongful and unlawful on the part of defendant Burton, and after request by plaintiff not to publish same." That issue was no doubt submitted by reason of certain decisions of this Court to the effect that on recovery for a tort, founded on negligence, merely arrest and imprisonment on final process would not be justified, the cases holding further that to justify such imprisonment there must be a finding by the jury that the tort was "willfully committed." McKinney v. Patterson, 174 N. C., 483; Oakly v. Lasater, 172 N. C., 96, a general principle fully approved and justified in a former case of Ledford v. Emerson, 143 N. C., 527, wherein it was held that where fraud was charged in proceedings ancillary to the principal

action, for an accounting, arrest and imprisonment by final process could not be had unless the issue of fraud was passed upon on an issue submitted to the jury. Whether the principle adverted to and involved in these decisions is permitted or required on a tort like the present is not now before us, but the issue we are considering was evidently submitted, not in waiver of defendant's failure to answer or of any rights accruing to plaintiff by reason of it, but with a view of having it determined by the jury whether, in addition to the admission of a cause of action growing out of defendant's failure to answer, the tort so admitted was willful and without just cause or excuse.

On full consideration, we are of opinion that the exceptions of appellant as now presented in the record disclose no reversible error, and the judgment on the verdict is affirmed.

No error.